**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

Case No.: 1:25-cv-24487-DPG

CENTER FOR BIOLOGICAL DIVERSITY and MIAMI WATERKEEPER

*Plaintiffs*,

v.

DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior; U.S. DEPARTMENT OF THE INTERIOR; BRIAN NESVIK, in his official capacity as Director of the U.S. Fish and Wildlife Service; and the U.S. FISH AND WILDLIFE SERVICE,

*Defendants*.

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. 30 Days from This Court's Order is a Reasonable Deadline; A Date in 2029 is Not. ..... 1

A. The Service Has Not Shown That Substantial Compliance with the ESA is Infeasible. ..... 2

B. Inapplicable Regulatory Requirements Do Not Justify Delay ..... 6

C. Threats to the Miami Cave Crayfish Continue to Mount ..... 7

II. Mr. Greenwald's Declaration Should Be Considered in its Entirety ..... 8

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

## Federal Caselaw


*Ala. Power Co. v. Costle*,
636 F.2d 323 (1979) .......... 4

*Ala.-Tombigbee Rivers Coal. v. Kempthorne*,
477 F.3d 1250 (11th Cir. 2007) .......... 5, 8

*Biodiversity Legal Found. v. Badgley*,
309 F.3d 1166 (9th Cir. 2002) .......... 1, 2

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
781 F.3d 1271 (11th Cir. 2015) .......... 9

*Coastal Wellness Ctrs., Inc. v. Progressive Am. Ins. Co.*,
309 F. Supp. 3d 1216 (S.D. Fla. 2018) .......... 9

*Cronin v. Browner*,
90 F. Supp. 2d 364 (S.D.N.Y. 2000) .......... 3

*Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*,
100 F.4th 1349 (11th Cir. 2024) .......... 8

*Ctr. for Biological Diversity v. Kempthorne,*
No. C 08-1339 CW, 2008 WL 1902703 (N.D. Cal. Apr. 28, 2008) .......... 2

*Ctr. for Biological Diversity v. Norton*,
304 F. Supp. 2d 1174 (D. Ariz. 2003) .......... 6

*Ctr. for Biological Diversity v. Norton*,
No. CV 02-1067 LH/RHS, 2003 WL 27384876 (D.N.M. Sept. 30, 2003) .......... 1

*Envtl. Def. Ctr. v. Babbitt*,
73 F.3d 867 (9th Cir. 1995) .......... 1

*Fla. Home Builders Ass'n v. Norton*,
496 F. Supp. 2d 1330 (M.D. Fla. 2007) .......... 3, 5

*Forest Guardians v. Babbitt,*
174 F.3d 1178 (10th Cir. 1999) .......... 2, 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 8

*Me. Ass'n of Handicapped Persons v. Dole*,
623 F. Supp. 920 (D. Me. 1985) .......... 3

*Nat. Res. Def. Council v. Train*,
510 F.2d 692 (D.C. Cir. 1974) .......... 2, 3, 4, 5

*Sabra v. Pompeo*,
453 F. Supp. 3d 291 (D.D.C. 2020) .......... 9

*San Francisco Baykeeper v. U.S. Fish & Wildlife Serv.*,
No. 25-CV-01360-LJC, 2025 WL 2528687 (N.D. Cal. Sept. 3, 2025) .......... 6

*Sierra Club v. Thomas*,
828 F.2d 783 (D.C. Cir. 1987) .......... 3

*Tenn. Valley Auth. v. Hill,*
437 U.S. 153 (1978) .......... 2

*United Steelworkers of Am. v. Rubber Mfrs. Ass'n*,
783 F.2d 1117 (D.C. Cir. 1986) .......... 3

**Federal Statutes**

16 U.S.C. § 1533 .......... 1, 7

**Regulations**

50 C.F.R. § 17.31 .......... 6, 7

**Federal Register Publications**

88 Fed. Reg. 64856 (September 20, 2023) .......... 7, 8

91 Fed. Reg. 45723 (July 21, 2026) .......... 6

## INTRODUCTION

The United States Fish and Wildlife Service (Service) does not dispute that it has failed to publish a final determination on its September 20, 2023 proposed rule to list the Miami cave crayfish as a threatened species, as required by the Endangered Species Act. Fed. Defs.' Opp'n, ECF No. 28 (Opp.) at 1, 7. Further, the Service does not contest Plaintiffs' standing in this case and does not oppose an order from the Court directing the agency to complete the final listing determination by a date certain. *Id.* at 7. Plaintiffs are, therefore, entitled to summary judgment.

The Service, however, asks this Court to grant it another 32 months—until June 13, 2029—to remedy a violation that is already two years overdue. Such relief would provide the Service with more than five years to finalize a proposed rule that Congress directed the Service to complete within 12 months. 16 U.S.C. § 1533(b)(6)(A).

For the reasons set forth below, Plaintiffs respectfully request this Court reject the Service's proposed deadline and order the Service to issue a final determination on its proposed rule to list the Miami cave crayfish as a threatened species within 30 days. This resolution reasonably effectuates Congress' judgment that "timeliness in the listing process is essential." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002) (citation omitted).

## ARGUMENT

### I. 30 Days from This Court's Order is a Reasonable Deadline; A Date in 2029 is Not.

Ordering the Service to comply with the ESA within 30 days is both reasonable and equitable. *See Envtl. Def. Ctr. v. Babbitt*, 73 F.3d 867, 872 (9th Cir. 1995) (directing the district court to order the Service to make a final determination at "a reasonable time"). Permitting the Service several years more to do a job it was tasked with completing in 12 months is not. *See Ctr. for Biological Diversity v. Norton*, No. CV 02-1067 LH/RHS, 2003 WL 27384876, at *3 (D.N.M. Sept. 30, 2003) ("Courts applying this standard have ordered compliance by the

[Service] within weeks or months, not years into the future.”). Indeed, courts have ordered final determinations on species listing proposals in as few as 14 and 17 days. *See Forest Guardians v. Babbitt,* 174 F.3d 1178, 1193 (10th Cir. 1999); *Ctr. for Biological Diversity v. Kempthorne,* No. C 08-1339 CW, 2008 WL 1902703, at *4 (N.D. Cal. Apr. 28, 2008).

Context matters when determining reasonableness, and Congress provided this context through firm mandatory deadlines that foreclose agency discretion and afford species “the highest of priorities.” *Tenn. Valley Auth. v. Hill,* 437 U.S. 153, 174 (1978); *see also Badgley*, 309 F.3d at 1178 (“The exercise of discretion is foreclosed when statutorily imposed deadlines are not met.”). As detailed below, the Service’s self-inflicted resource constraints—capping and reducing its budget requests, forcing a reduction in staff, and undertaking an additional regulatory process that does not apply to the crayfish final rulemaking—are not a reasonable basis for overturning the statutory mandate. Meanwhile, the species has continued to decline toward extinction because of existential threats that remain unaddressed by purported “conservation efforts.” Consequently, an Order requiring the Service to comply with its statutory obligations within 30 days is reasonable.

### A. The Service Has Not Shown That Substantial Compliance with the ESA is Infeasible.

The Service’s argument that budgetary and staffing constraints “beyond the agency’s capacity” make timely listing infeasible, Opp. at 9–10 (citing *Nat. Res. Def. Council v. Train*, 510 F.2d 692, 712–13 (D.C. Cir. 1974)), seeks to reintroduce the very discretion Congress explicitly removed when enacting the ESA. *See Forest Guardians*, 174 F.3d at 1190 (“[W]hen Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion. The agency must act by the deadline.”). Moreover, to the extent they exist in any limiting capacity, the Service’s budget and staffing constraints are self-inflicted. The Court

should not reward these self-inflicted constraints with a lengthy renewed date for compliance with explicit statutory mandates.

The Service's insinuation that administrative "feasibility" is the overriding criterion in selecting a reasonable deadline is incorrect and based on non-ESA caselaw, largely in other jurisdictions, that has no relevance here. *See Cronin v. Browner*, 90 F. Supp. 2d 364, 373 (S.D.N.Y. 2000) (addressing violation of the Clean Water Act); *Sierra Club v. Thomas*, 828 F.2d 783, 798–99 (D.C. Cir. 1987) (addressing violation of the Clean Air Act); *United Steelworkers of Am. v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986) (addressing violation of the Occupational Safety and Health Act); *Me. Ass'n of Handicapped Persons v. Dole*, 623 F. Supp. 920, 926 (D. Me. 1985) (addressing violation of the Surface Transportation Assistance Act).

The only relevant case the Service raises is *Florida Home Builders Association v. Norton*, 496 F. Supp. 2d 1330 (M.D. Fla. 2007), and the remedy there is easily distinguishable. In *Florida Home Builders*, the "infeasibility" surrounded the Service's capacity to conduct 89 separate overdue 5-year status reviews on Plaintiff's requested schedule. *Id* at 1336. And the 11th Circuit cautioned against the Service relying on this decision as an excuse to delay legal compliance with the ESA moving forward. *Id.* ("Accepting Defendants' schedule in no way excuses the Service's noncompliance with legislative mandates. In the future, Defendants should address budgetary concerns to Congress.").

The Service also improperly relies on the D.C. Circuit's holding in *Train* multiple times, which concerns *non-explicit* statutory obligations under the Federal Water Pollution Control Act, rather than the explicit statutory deadlines of the ESA. *Train*, 510 F.2d at 695. Specifically, the Service fails to mention the substantial compliance shown by the EPA in that case, which is absent here, as well as the heavy burden placed on the party alleging impossibility. *Id*. at 714

("We take into account the Administrator's substantial compliance with the timetable for publication of Group I guidelines."); *see also Ala. Power Co. v. Costle*, 636 F.2d 323, 359 (1979) ("But we emphasized [in *Train*] that the agency bore a heavy burden to demonstrate the existence of an impossibility.").

The Service has simply not met that burden because each excuse for its delay is a problem of its own making. *Train*, 510 F.2d at 713. ("An equity court can never exclude claims of inability to render absolute performance, but it must scrutinize such claims carefully since officials may seize on a remedy made available for extreme illness and promote it into the daily bread of convenience.").

For example, the Service points to its reduced budget and its assumption that "it is extremely unlikely that [future appropriations] will be an increase from FY 2026, and it may even be a further decline." Opp. at 14; Maclin Decl. ¶ 6. However, this argument fails to acknowledge that the Service itself *requested* the budget reduction. *See* Greenwald Decl., Ex. B (United States Department of the Interior, Budget Justifications and Performance Information Fiscal Year 2026). In fact, this year, Congress appropriated far more than what the Service requested. Though the Service only requested $7,375,000 for 2026, Congress ultimately appropriated $14,000,000. *Id.*; *see also* Greenwald Decl., Ex. C (H.R. 6938 - Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026, Pub. L. No. 119-74, 140 Stat. 5 (2026)).

It is absurd for the Service to request a roughly 68% reduction in its budget, receive a 36% reduction, then turn to this Court for relief based on the infeasibility of completing its workload due to an "extreme budget and staffing deficit." Opp. at 15; *see also* Greenwald Decl., Ex. B, at ES-1 (United States Department of the Interior, Budget Justifications and Performance

Information Fiscal Year 2026). However, it is unsurprising for an administration that has only finalized determinations for three species in nearly two years, all of which came pursuant to a court-overseen settlement agreement. *See Ala.-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1268 (11th Cir. 2007) ("We are troubled by the Service's apparent practice of routinely delaying [ESA determinations] until forced to act by court order.").

Next, the Service points to a seventeen percent reduction in staff in the office tasked with making this determination over the last year. Opp. at 12. This is irrelevant because: (1) this legal violation is more than two years old, meaning the Service had adequate staff in 2024 to complete this rule before a legal violation occurred; (2) the Service chose to reduce its staff to the level it has now through considerable workforce reduction efforts. *See Forest Guardians*¸ 174 F.3d at 1192 ("In the face of Congress' clear command, the Secretary's inadequate resource argument must fail with respect to the appropriate remedy.").

Finally, the Service's reference to numerous court-overseen deadlines for ESA decisions, *See* Cooley Decl. ¶ 17 (claiming that "all except two [FY27 actions] have court-ordered dates"), only reinforces why Plaintiffs' request is reasonable and necessary: the Service will not fulfil its obligations under the ESA until it is forced to through litigation. Critically, an agency acting in good faith and facing a listing backlog and multiple court-overseen deadlines through 2029 would not continuously seek a smaller budget to complete its work.

The Service's backlog, staffing, and budget decisions are not "beyond the agency's capacity" and cannot justify further delay. *See Train*, 510 F.2d at 712. In fact, they are quite clearly constraints of its own making. *See Florida Home Builders Association*, 496 F. Supp. 2d at 1336 (Defendants should address their "budgetary and resource constraints" with Congress "rather than let mandatory deadlines expire with inaction"); Pls.' Mot. For Summary Judgment,

ECF No. 26 at 18–20. The Service's consistent hamstringing of its own ability to comply with statutory obligations does not constitute an infeasibility or good faith effort. *See Ctr. for Biological Diversity v. Norton*, 304 F. Supp. 2d 1174, 1180 (D. Ariz. 2003) ("[T]he United States may not evade the law simply by failing to appropriate enough money to comply with it.") (citation omitted); *San Francisco Baykeeper v. U.S. Fish & Wildlife Serv.*, No. 25-CV-01360-LJC, 2025 WL 2528687, at *6 (N.D. Cal. Sept. 3, 2025) ("Congress has already set a mandatory deadline and appropriated a certain amount of funds to meet that deadline, and the degree of review must be feasible within those parameters."). The Service should not be incentivized to consistently call upon the judiciary to reset the goalposts set by Congressional.

**B. Inapplicable Regulatory Requirements Do Not Justify Delay.**

The Service is incorrect that, pursuant to 50 C.F.R. § 17.31(d), the agency "must now prepare a determination supporting why the 4(d) rule is necessary and advisable" through a lengthy process that makes compliance with Plaintiffs' requested remedy impossible. *See* Opp. at 16, 20; Cooley Decl. ¶ 12. The July 2026 regulation that generated this new obligation does not apply retroactively to rulemakings, like that for Miami cave crayfish, that have already commenced. The Court should dismiss this disingenuous argument, which does nothing to justify the Service's delay.

The Service's self-imposed obligation in a July 2026 regulation coincidentally adds *more* of a regulatory burden at a time the agency claims it is already incapable of fulfilling its current duties under the ESA because of its own staffing and funding decisions. *See* 91 Fed. Reg. 45723 (July 21, 2026). However, the Service explicitly states the regulation is forward-looking and does not apply to existing proposed rulemakings. *Id.* at 45725 (explaining that "*going forward, whenever we propose a species-specific 4(d) rule*, we will ensure that each rule includes" a "necessary and advisable" determination) (emphasis added); *see also* 50 C.F.R. § 17.31(d)

(2026) (requiring consideration of economic impacts for "[e]ach species-specific rule proposed after August 20, 2026").

The Service conveniently disregards that the Miami cave crayfish has a proposed species-specific 4(d) rule that was published concurrently with the proposed listing determination on September 20, 2023, nearly three years before this forward-looking regulation took effect. *See* 88 Fed. Reg. 64856 (September 20, 2023) (titled "Endangered and Threatened Wildlife and Plants; Threatened Species Status *With Section 4(d) Rule* for the Miami Cave Crayfish" (emphasis added)). This is a clear attempt by the Service—the executive agency tasked with protecting wildlife—to further delay its responsibilities under the ESA. The Court should not be persuaded.

**C. Threats to the Miami Cave Crayfish Continue to Mount.**

The Service argues that an additional nearly three-year delay to finalize its proposed rule listing the Miami cave crayfish is justified because "no new information has come to the Service's attention that would suggest the active threats have increased, or that the existing threats are of an imminence and magnitude such that the species requires emergency listing." Opp. at 15; Cooley Decl. ¶¶ 16, 20. This fundamentally misconstrues the purpose of this litigation and the Miami cave crayfish's status and threats.

Plaintiffs are not seeking an "emergency listing" of the Miami cave crayfish. Plaintiffs are seeking the finalization of a proposed rule from 2023 that was statutorily mandated to be completed within the typical 12-month timeline. Conversely, an emergency listing temporarily waives procedural requirements in response to a significant risk to the well-being of a species in to provide immediate regulatory action. 16 U.S.C. § 1533(b)(7). Given that Plaintiffs Center for Biological Diversity petitioned the Service to list the Miami cave crayfish in 2010, the Service's

implication that the requested remedy in litigation 16 years later is tantamount to an "emergency listing" is inane.

Further, the majority of the purported "conservation efforts" the Service lists, Opp. at 16, fail to address the primary threats to the species and, as the Service noted when it proposed to confer ESA protections to the Miami cave crayfish, they have failed to prevent the crayfish's continued declined toward extinction. *See* 88 Fed. Reg. at 64864 ("Currently, there are no conservation efforts specific to the Miami cave crayfish."); *id*. at 64865 (detailing significant habitat losses expected by 2070). The Service's own declaration in support of its remedy recognizes that the Biscayne Aquifer's groundwater, the only known habitat for the Miami cave crayfish, currently has "limited protective benefits from anthropogenic contamination" and those that exist "offer indirect benefits to the quality of freshwater within the Biscayne Aquifer system." Cooley Decl. ¶ 11.

The Miami cave crayfish's proposed threatened status does not confer any protection to the species. *See Ala.-Tombigbee Rivers Coal.,* 477 F.3d at 1274 ("The decision to list a species as endangered or threatened is a necessary precondition to the protections afforded species under the [ESA]."). Absent a final listing determination, the Service's assurances amount to little more than voluntary promises, leaving the Miami cave crayfish without the enforceable protections Congress mandated under the ESA.

## II. Mr. Greenwald's Declaration Should Be Considered in its Entirety.

The Service's objections to a handful of statements in Mr. Greenwald's declaration are unfounded. Opp. at 18–20. Mr. Greenwald's testimony about his research and history with the Miami cave crayfish and the Service's listing determinations is relevant both to the Center's Article III standing and the appropriate remedy in this case, both of which inherently require

evidentiary showings. For example, declarations from organizational members detailing personal, aesthetic, and recreational injuries are necessary to satisfy the injury-in-fact standing requirement. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000); *see also Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, 100 F.4th 1349, 1355 n.3 (11th Cir. 2024) (restating the District Court's holding that extra record materials were "admissible for standing purposes."). The Eleventh Circuit has also noted that determining an equitable remedy for a legal violation "may require additional fact-finding." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1289–91 (11th Cir. 2015).

Puzzlingly, the Service's own extra-record declarations filed in support of its preferred remedy address the very same issues, only phrased to exclude relevant information from the Court's review. *Compare* Greenwald Decl., ¶ 9 ("[T]he Service requested a budget of just $7,375,000, down from $22,000,000 for fiscal year 2025. Ultimately, Congress appropriated $14,000,000 [for fiscal year 2026], which was still a 36 percent drop.") *with* Maclin Decl., ¶ 5 ("In Fiscal Year 'FY' 2026, Congress set the National Listing Budget at $14,000,000—an $8,000,000 reduction from the previous year's budget of $22,00,000 in FY 2025"). This statement, among others in Mr. Greenwald's declaration, is also supported by judicially noticeable documents. *See, e.g.*, Pl.s' Mot. For Summary Judgment at n.1, 11–12 (explaining that these government documents come from a "source[] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Coastal Wellness Ctrs., Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018) ("The Court may take judicial notice of government publications and website materials."); *Sabra v. Pompeo*, 453 F. Supp. 3d 291, 302 n. 5 (D.D.C. 2020) (taking notice of federal government's "official website").

Finally, Mr. Greenwald's testimony is also clearly based on his personal knowledge, work, and observations. *See* Greenwald Decl., ¶ 5 (detailing that Mr. Greenwald authored the Miami cave crayfish listing petition that began this process in 2010); *see also id.* ¶¶ 7, 12 (detailing Mr. Greenwald's decades of tracking Service listings and his peer-reviewed publication finding that listed species wait an average of twelve years to receive protection). Mr. Greenwald's testimony is therefore well-founded and admissible.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant its Motion for Summary Judgment and order the Service to take final action on the proposed rule listing the Miami cave crayfish as an endangered or threatened species under the ESA within 30 days of the Court's order in this case.

DATED: October 26, 2026

Respectfully submitted,

***/s/ Ragan Edward Whitlock***
Ragan Edward Whitlock (FL Bar Number: 1034177)
rwhitlock@biologicaldiversity.org
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel: (727) 426-3653

***/s/ Elise Pautler Bennett***
Elise Pautler Bennett (FL Bar Number: 106573)
ebennett@biologicaldiversity.org
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, Florida 33731
Telephone: (727) 755-6950

*Attorneys for Plaintiffs Center for Biological Diversity and Miami Waterkeeper*